UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 98-007-DCR |
| ) | |
| V. ) | |
| ) | |
| REX HALL, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Rex Hall has filed a third motion for compassionate release. The motion will be denied because Hall has failed to identify extraordinary and compelling circumstances warranting a sentence reduction and the factors under 18 U.S.C. § 3553(a) do not weigh in favor of granting relief.

**I.   Background**

Hall was convicted in March of 1998 of conspiring to possess with intent to distribute marijuana, conspiring to possess with intent to distribute cocaine, possessing with intent to distribute marijuana, and possessing with intent to distribute cocaine. On June 26, 1998, he was sentenced to life imprisonment on each count, to be served concurrently. [Record No. 89] Hall's sentence was affirmed on appeal and his attempts to collaterally attack his sentence were unsuccessful.

Hall filed motions for compassionate release in November 2019 and March 2021, arguing *inter alia* that he had demonstrated a good record of rehabilitation, he was aging, and that his health was deteriorating. Both motions were denied because Hall did not demonstrate

extraordinary and compelling circumstances for a sentence reduction. Further, the 18 U.S.C. § 3553(a) factors did not warrant granting relief. Specifically, the seriousness of Hall's crimes coupled with his extensive drug trafficking history and background in law enforcement weighed against reducing his sentence.

Hall cites his age (80), medical problems, good conduct, and prior military service as grounds for his third motion for compassionate release. The United States has tendered a response in opposition to Hall's motion.

## II.   Standard of Review

The Court generally may not modify a term of imprisonment after it is imposed. 18 U.S.C. § 3582(c). However, an exception to this rule exists when a defendant files a motion for a sentence reduction, after fully exhausting all administrative remedies, and is able to show:

> (i) extraordinary and compelling reasons warrant such a reduction; or (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imposed, and a determination has been made by the Director of the Bureau of Prisons [BOP] that the defendant is not a danger to the safety of any other person or the community . . . .[1]

§ 3582(c)(1)(A)(i), (ii). The Court also must consider the factors set forth in 18 U.S.C. § 3553(a) in determining whether a sentence reduction is appropriate. Finally, any sentence reduction must be consistent with applicable policy statements issued by the United States Sentencing Commission. § 3582(c)(1)(A).[2]

---

[1]   Hall exhausted his administrative remedies with the BOP.

[2]   The commentary to U.S.S.G. § 1B1.13 provides examples of extraordinary and compelling reasons that might warrant granting a sentence reduction. However, the current version of § 1B1.13 only applies to motions brought by the Director of the Bureau of Prisons— not motions filed by prisoners themselves. Thus, § 1B1.13 is not an "applicable policy statement" in this case.

A district court has discretion to define extraordinary and compelling reasons with respect to motions filed by prisoners directly. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022). "Most obviously, 'extraordinary and compelling' 'covers factors like those enumerated by the Sentencing Commission—health, age, and family circumstances . . . .'" *Id.* (quoting *United States v. Jenkins*, 50 F.4th 1185, 1203 (D.C. Cir. 2022)). The guidelines also recognize that a defendant's age can constitute an extraordinary or compelling circumstance when he or she is at least 65 years old, has served at least ten years, and "is experiencing a serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13 cmt. 1(B).

### III.

**A. Hall has not identified extraordinary and compelling reasons.**

Hall reports that he is suffering from urinary tract infections, type 2 diabetes, hypothyroidism, hypertension, hyperlipidemia, coronary artery disease, benign prostate hypertrophy (BPH), anxiety, osteoarthritis, constipation, glaucoma, and "the beginning of Alzheimer's disease." [Record No. 200, p. 13] He discusses how his cardiovascular disease and BPH may advance and speculates that he may develop prostate cancer. Hall also reports that he is showing symptoms of "early stage" and "parts of the second stage" of Alzheimer's disease. The United States has provided Hall's recent medical records in response to his motion. [Record No. 206-3] These records indicate that Hall has received regular medical care and confirm many of his alleged diagnoses, including hypothyroidism, diabetes, hypertension, constipation, coronary artery disease, and chronic kidney disease. However, it appears that all of these conditions are stable and are being managed with medications.

Although Hall was noted as having diminished sensation in his feet, he was observed to have a straight and steady gait. He is housed in a lower bunk and is permitted to use extra blankets, and wear soft shoes and a jacket year round due to his age and medical issues. He voluntarily surrendered his walker in December 2022 stating that he no longer needed it.

Hall reports that his disciplinary record while incarcerated has been "exemplary" and he has not received any misconduct reports. However, the United States has provided documentation indicating that he has received at least four misconduct reports, the most recent in 2017 for possessing "wax narcotics." Hall also touts his completion of more than 34 educational course and reminds the Court of his military service and his participation in the Vietnam War. The Court commends the defendant on his educational achievements and acknowledges his military service, but neither of these accomplishments is "extraordinary" or "compelling" for purposes of § 3582(c). *See McCall*, 56 F.4th at 1055 (defining an "extraordinary and compelling reason" as one that is "unusual, rare, and forceful").

While Hall is over 65 years old and has served more than 10 years of his sentence, the record does not indicate that he is experiencing a serious deterioration in physical or mental health because of the aging process. Hall has several chronic health problems, but the medical records indicate that the BOP is managing them sufficiently. The Court notes that Hall has refused medical testing that has been offered on multiple occasions and recently advised BOP staff that he no longer needs a walker for assistance. Hall's motion focuses primarily on medical issues from which he does not suffer, but speculates he may develop in the future.

Hall has failed to establish that extraordinary and compelling reasons for a sentence reduction exist in this case.

### B. The § 3553(a) factors do not warrant a sentence reduction.

The § 3553(a) factors do not weigh in favor of granting a sentence reduction. Hall's drug trafficking crimes were extremely serious. He was an organizer or leader of a drug trafficking scheme which involved numerous individuals, large amounts of controlled substances and cash, and spanned several states. Further, Hall obstructed justice by falsely asserting during trial that he had authority to engage in drug trafficking by working as an informant for the government.

Next, Hall's personal characteristics and criminal history are extremely concerning. He was raised by a well-respected family in Floyd County, Kentucky, is well educated, and served in the United States Air Force, from which he was honorably discharged in 1967. He joined the Lexington Police Department in 1968 and became a detective before resigning in 1977 to start his own private security company. Notwithstanding Hall's privileges and positions of public trust, he was arrested in Florida in February 1978, after he and an employee were found to be in possession of multiple weapons and other contraband.[3]

Hall was released on bond but arrested again in Florida 12 days later for possessing a concealed weapon. This time, Hall had a loaded .357 Magnum revolver with a four-inch barrel and 22 shells for the weapon concealed on his person. He was convicted of both charges and sentenced to five years' probation on each charge, to be served concurrently.

---

[3] The contraband included: a .30 caliber, semi-automatic carbine, a 9 millimeter Browning pistol, a ski mask, a can of ether, surgical gloves, a .357 Magnum revolver with gas grenade launcher, six canisters of military-type gas hand grenades, a metal detector for weapons, a miniature cassette recorder with an attachment for remote monitoring of telephones, a tool set commonly used to work on locks, 122 Valium pills with no prescription, and 31 unidentified pills with no prescription. Hall also possessed a concealed and loaded nine-shot, .22 caliber revolver, while his employee possessed a concealed four-shot .22 caliber mini-revolver.

Hall was arrested on a federal charge of conspiring to manufacture phenyl cyclohexyl piperidine (PCP) four months later.  The investigation revealed that, in late 1977, Hall told a college professor that he was a Lexington Police Officer involved in a PCP investigation and asked the professor to consult on the investigation.  Hall convinced the professor to educate him on the manufacture of PCP, including helping him actually make various amounts of the substance.  Over a period of about 18 months, Hall and the professor manufactured nearly 500 grams of PCP, which Hall took with him when the manufacturing process was complete.  Hall also contacted the Kentucky State Police laboratory during this period and, after representing himself as a Lexington Police Officer involved in a PCP investigation, asked for and obtained information on how to manufacture PCP.

After learning the manufacturing process, Hall set out to obtain the materials and precursor chemicals to manufacture PCP on his own.  In June 1979, law enforcement learned that Hall and a co-conspirator were traveling to New York to purchase a large quantity of precursor chemicals.  Hall and the co-conspirator were stopped by law enforcement as they transported the chemicals from New York to Kentucky.  As law enforcement approached the defendant's vehicle on foot, Hall placed the car in reverse and accelerated backwards, almost hitting the officers.  Hall's attempted to flee but was stopped when law enforcement officers opened fire on his car.  Approximately 90 pounds of dry precursor chemicals and three pounds of liquid precursor chemicals were found in the trunk of Hall's vehicle.

Hall pleaded guilty and was sentenced to five years' imprisonment in November 1979.  In 1984 (only seven months after being released from prison), Hall was arrested in Florida for selling cocaine.  Hall was convicted for that crime and sentenced to 18 months' imprisonment.  Hall returned to Kentucky after serving that sentence.  He managed to avoid involvement with

law enforcement until 1993, when he was arrested in Fayette County for placing a gun in his then pregnant wife's mouth and threatening to kill her, threatening to kill other family members, and physically assaulting his wife. Ultimately, Hall pleaded guilty to second degree wanton endangerment and was sentenced to two-years of probation. Hall's probation expired in September 1995. The events giving rise to the instant action began by 1996.

Hall reports that he is now "an inoffensive, elderly man without the physical and mental ability to cause harm to anybody." While the Court is sympathetic to the defendant's health concerns, his claims are not fully consistent with medical records from the BOP. Further, the undersigned is unpersuaded by Hall's contention that he lacks the "ability to cause harm to anybody." Instead, the records reflect that Hall is a cunning individual who devoted himself to a life of crime for many years. Spryness is not a prerequisite for criminal conduct.

The Court also concludes that a lengthy sentence is necessary in this case to impose specific deterrence and protect the public from the defendant's long pattern of criminal conduct. Hall's guidelines range at the time of sentencing was 360 months to life, based on a total offense level of 37 and criminal history category of VI. However, he was subject to a mandatory life sentence on counts 2 and 4 based on his prior drug trafficking convictions and the quantity of cocaine involved in the instant offenses. *See* 21 U.S.C. § 841(b)(1)(B) (eff. Oct. 13, 1996 to Oct. 20, 1998). Hall has not identified a reason for this Court to disturb the previously imposed sentence.

### C. Hall's request for counsel will be denied.

Defendants generally are not entitled to appointed counsel to litigate compassionate release motions. *See United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (per curiam). Instead, it is a privilege that is justified only by exceptional circumstances. *Lavado*

*v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993); *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). In determining whether exceptional circumstances exist, courts examine the type of case and the defendant's ability to represent himself. *Id.* at 606; *United States v. Dukes*, 2020 WL 7212567, at *2 (E.D. Ky. Dec. 7, 2020). Through his motion, and considering his education and experience with the legal system, Hall has demonstrated the ability to adequately present his issues to the Court. Accordingly, his request for counsel will be denied.

### IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the defendant's motion for compassionate release and appointment of counsel [Record No. 200] is **DENIED**.

Dated: June 27, 2023.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky